UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TERRY ROSE, JR., | ) |
|     Plaintiff, | ) |
| | ) Jury Demanded |
| vs. | ) No. 1:16-cv-00067-TAV-CHS |
| | ) |
| CARROLL'S, LLC d/b/a CARROLL TIRE COMPANY, | ) |
| | ) |
|     Defendant. | ) |

## FIRST AMENDED COMPLAINT

Comes Plaintiff and sues Defendant for damages and injunctive relief. Plaintiff shows unto the Court as follows:

### I. JURISDICTION

1. Plaintiff Terry Rose, Jr., is a 42-year-old resident of Polk County, Tennessee. Plaintiff was employed by Defendant in Polk County, Tennessee.

2. Defendant Carroll's, LLC is a tire distributor doing business as Carroll Tire Company in Polk County, Tennessee. Defendant is a Georgia corporation and is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A), 29 U.S.C. § 630(b), 29 U.S.C. §2617, and Tenn. Code Ann. § 4-21-102, so as to subject the Defendant to the provisions of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), Family and Medical Leave Act (FMLA), and the Tennessee Human Rights Act (THRA), as amended.

3. Jurisdiction and venue are proper in this Court. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. NATURE OF PROCEEDING

4. This is a proceeding for back pay; reinstatement or front pay in lieu of reinstatement; the value of all employee benefits; liquidated damages; damages for humiliation and embarrassment; attorneys' fees and costs; prejudgment interest; punitive damages, and for such additional damages and equitable relief as may be necessary to effectuate the purposes of the ADA, ADEA, FMLA, and THRA.

## III. FACTUAL BASES OF PLAINTIFF'S CLAIMS

5. Plaintiff was employed by Defendant as a Distribution Center Supervisor from April 2011 until his return from FMLA leave on August 28, 2014.

6. Plaintiff had a good working relationship with Defendant until May 2014 when Plaintiff injured his left shoulder and right hand and later in the same month required knee surgery. Plaintiff took FMLA leave from May 2014 until August 28, 2014, for knee surgery.

7. Plaintiff was released from his doctor to return to work on August 29, 2014, with restrictions of no overhead work (related to his right shoulder injury) and no lifting with his left hand. Even with these restrictions, Plaintiff was able to perform the essential functions of his supervisory job.

8. Upon notifying his supervisor, Buddy Swafford, that he could return on August 29, 2014, Mr. Swafford demanded that Plaintiff return one day earlier, August 28, 2014.

9. Mr. Swafford refused to return Plaintiff to his prior job duties as Distribution Center Supervisor. Mr. Swafford told Plaintiff that his temporary replacement was "younger and doing a better job."

2

10. Plaintiff objected to Mr. Swafford's discriminatory comment and treatment, and Mr. Swafford replied, "It is hell getting old. You should step aside and allow the younger employees to do the work."

11. Plaintiff could perform his supervisory duties, but Mr. Swafford instead assigned Plaintiff to manual labor, which exceeded his reaching and lifting medical restrictions. Mr. Swafford demanded that Plaintiff pull tire orders, stack tires, and load trucks. This strenuous work caused further injury to Plaintiff, but Mr. Swafford refused to allow him to leave work for medical treatment.

12. Within one month of his return to work from FMLA leave, Plaintiff's compensation was changed from salary to hourly with a 20% reduction in pay.

13. Each time that Plaintiff reminded Mr. Swafford of his medical restrictions, Mr. Swafford would reply that Plaintiff should go home.

14. In late September of 2014, Mr. Swafford assigned Plaintiff as a truck driver, which position exceeded Plaintiff's medical restrictions. Mr. Swafford told Plaintiff that he had "hired a young guy who can keep up." As a truck driver, Plaintiff not only had to drive deliveries to customers, but Plaintiff was also required to unload tires weighing far in excess of his lifting restriction.

15. Plaintiff once again reminded Mr. Swafford that he had medical restrictions, and that he could perform his job as a supervisor. Mr. Swafford commented that at his age Plaintiff could not do the work. Mr. Swafford further told Plaintiff that as long as he was manager, Plaintiff would never be allowed to return to his prior supervisor position.

16. On October 1, 2014, Mr. Swafford moved Plaintiff to pulling tires for the routes. This job required Plaintiff to work overhead and to lift tires. Plaintiff once again reminded Mr.

3

Swafford of his disability and restrictions. Mr. Swafford told Plaintiff to clock out and go home. He refused to accommodate Plaintiff's restrictions or to allow Plaintiff to continue working.

17. That same day, Plaintiff complained to Defendant's corporate office that he was being discriminated against with regard to his age and disability. In response, Plaintiff received a write up dated October 1, 2014, when he returned to work.

18. At the end of October, 2014, Mr. Swafford once again put Plaintiff on a truck route delivering tires and other items to customers. Mr. Swafford left a younger employee, Daniel Reagan, in Plaintiff's supervisory position because Mr. Reagan was "younger and could handle the work."

19. Mr. Reagan was given the title of Assistant Manager, but his job duties are those of the Distribution Center Supervisor, the position that Plaintiff held before he began FMLA leave.

20. Plaintiff had difficulty performing the truck driver duties due to his disability. Plaintiff was required to reach overhead for tires, lift and load the tires, and unload and load tires at the customer's location. In addition, Plaintiff had to drive a manual truck which caused stress to his injured shoulder.

21. Because of his disability, Plaintiff was not able to perform the truck route duties as quickly as Mr. Swafford desired. Thereafter, Mr. Swafford moved Plaintiff to the office and told him that he was not to talk to any customers or other employees. Plaintiff was instructed to sit in the office without a computer or regular assigned work. As a result, Plaintiff was isolated from everyone else in the facility.

4

22. When Mr. Swafford saw that Plaintiff was not going to resign, he left Plaintiff in the office setting with the occasional duties of cleaning toilets or washing trucks. This retaliatory treatment continued until the early fall of 2015.

23. Plaintiff took leave from work for surgery on his shoulder on October 28, 2015. Shortly after taking medical leave, Mr. Swafford told Plaintiff not to return to work until he had received a 100% medical release.

24. Plaintiff has not been able to return to the manual labor jobs that Mr. Swafford had assigned to him prior to surgery. However, Plaintiff could have returned to the supervisory job Plaintiff held before Defendant's discriminatory action which began in August of 2014.

25. Defendant terminated Plaintiff's employment in early February 2016 on the ground that Plaintiff had exhausted his FMLA leave.

26. Plaintiff's disability – a labrum tear in his right shoulder and torn ligaments and broken bones in his left hand which have existed since May of 2014 – substantially limits his major life activities of lifting and reaching.

27. In the alternative, Plaintiff has a record of having a physical impairment that substantially limits one or more major life activities.

28. In the alternative, Defendant regarded Plaintiff as having a disability.

29. At all times Plaintiff was qualified to perform his job as the Distribution Center Supervisor.

30. Plaintiff was able to perform the essential functions of his position with or without reasonable accommodation.

31. Before returning from FMLA leave in August of 2014, Plaintiff had not received any discipline, verbal warnings or written warnings.

32. As a result of Defendant's actions, Plaintiff has suffered significant income loss, humiliation and embarrassment and other expense.

33. Defendant is responsible for the acts of its supervisory agents.

## IV. PLAINTIFF'S CLAIMS

<u>COUNT ONE: AGE DISCRIMINATION</u>

34. Plaintiff was discriminated against by Defendant because of his age, in violation of the ADEA and the THRA.

35. As a result of this discrimination, Plaintiff has lost (and continues to lose) salary, and benefits. He has also suffered humiliation, embarrassment and emotional harm.

<u>COUNT TWO: DISABILITY DISCRIMINATION</u>

36. Plaintiff was demoted and his pay reduced because of his disability and/or Defendant's belief that Plaintiff was disabled, in violation of the ADA, 42 U.S.C. §12112.

37. By knowingly instructing Plaintiff to perform tasks that violated Plaintiff's medical restrictions, despite Plaintiff's protests and reminders of his disability-related work restrictions, Defendant unreasonably refused to accommodate Plaintiff's disability in violation of the ADA, specifically 42 U.S.C. §12112(b)(5) and 29 C.F.R. §1630.2(*o*).

38. As a result of this discrimination, Plaintiff has lost (and continues to lose) salary, benefits, seniority, and the career to which he had devoted a substantial portion of his working life. He has also suffered considerable humiliation, embarrassment and emotional harm.

<u>COUNT THREE: FAMILY AND MEDICAL LEAVE ACT</u>

39. Upon his return to work from FMLA leave on August 28, 2014, Plaintiff was not restored to the Distribution Center Supervisor position, a position which he held immediately before his FMLA leave. Therefore, Defendant violated the FMLA, specifically 29 U.S.C. §2614.

### COUNT FOUR: RETALIATION

40. Defendant unlawfully retaliated against Plaintiff for his repeated requests for accommodation in the form of honoring his medical restrictions, as well as his internal complaints of age and disability discrimination, in addition to his filing of an EEOC charge of discrimination. By engaging in unlawful retaliation, Defendant further aggravated Plaintiff's disabilities, thus causing Plaintiff to incur additional medical leave, ultimately culminating in his termination of employment due to absenteeism.

41. Defendant's retaliation violates the ADEA, 29 U.S.C. §623; ADA, 42 U.S.C. §12203; and the THRA, Tenn. Code Ann. §4-21-301.

## V. ADMINISTRATIVE EXHAUSTION

42. Plaintiff timely filed a charge of discrimination with the EEOC alleging age and disability discrimination. Plaintiff received a Notice of Right to Sue from the EEOC on December 22, 2015. Plaintiff files this instant complaint within the 90-day period.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That proper process be issued and served upon Defendant, and Defendant be required to answer within the time prescribed by law;

b. That upon the hearing of this cause Plaintiff be awarded judgment for damages for lost wages and the value of all employment benefits which he has lost from the date of Defendant's discriminatory actions;

c. That the Court issue an injunction requiring Defendant to re-employ Plaintiff at his former position or at an equivalent job with all employment rights and benefits to which he

7

would have been entitled but for discrimination, and without harassment or illegal conditions imposed on his job; or in the alternative, front pay and benefits in lieu of reinstatement;

    d.    That Plaintiff be awarded liquidated damages as provided by law, attorneys' fees, court costs, and such other and further relief as the Court deems proper to effectuate the purposes of the ADEA and FMLA;

    e.    That Plaintiff be awarded damages for humiliation and embarrassment, attorneys' fees, costs and such other and further relief to which the Plaintiff is entitled pursuant to the ADA and the THRA;

    f.    That Plaintiff be awarded punitive damages as provided by 42 U.S.C. §1981a; and

    g.    That a jury try the issues in the cause.

BURNETTE, DOBSON & PINCHAK

By:   s/ *Doug S. Hamill*
Frank P. Pinchak, BPR No. 2094
Doug S. Hamill, BPR No. 22825
Attorneys for Plaintiff
711 Cherry Street
Chattanooga, Tennessee 37402
Tel: (423) 266-2121
Fax: (423) 266-3324
fpinchak@bdplawfirm.com
dhamill@bdplawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March, 2017, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By: s/ *Doug S. Hamill*